# EXHIBIT A

Insurance Commissioner
ACCEPTED SOP

DEC 15 2025

TIME: 8 am

ELECTRONICALLY FILED
12/2/2025 12:04 PM
MICHAEL J. KILLIAN
FRANKLIN COUNTY CLERK

AO

SUPERIOR COURT OF STATE OF WASHINGTON
COUNTY OF FRANKLIN

NORTHWEST RESTORATION
OPERATING, INC., a Washington
corporation,

                Plaintiff,

vs.

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign insurer,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  25-2-51617-11

**COMPLAINT**

*Filing Fee: $290.00*

Plaintiff Northwest Restoration Operating, Inc., by and through its attorney of record, William Gieri of Campbell & Bissell, PLLC, hereby alleges as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    At all times material, Northwest Restoration Operating, Inc. ("Northwest") was a corporation authorized to transact business in Washington and registered as a contractor, with its principal place of business located in Spokane County, Washington. Northwest performed all obligations and conditions required of it to commence and maintain this lawsuit.

2.    Upon information and belief, State Farm Fire and Casualty Company ("State Farm") is a foreign insurance company that provides property insurance to homeowners in various

COMPLAINT - 1

**CB | LAWYERS**

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W 7th Avenue
Spokane, WA 99204
509.455.7100

states across the United States. At all times material, State Farm provided property insurance for the property located at 234 N. Columbia Avenue, Connell, WA 99326 ("Property") pursuant to the terms and conditions of Policy Number 98EPC7313 ("Policy"). Upon information and belief, State Farm provided and continues to provide property insurance to individuals and entities in Washington.

3.     Venue and jurisdiction are proper in this Court pursuant to RCW §§ 2.08.010, 48.30.015(1), and 48.05.220.

## II.     FACTS

4.     On or about December 9, 2024, covered water damage occurred at the Property, resulting in damage to the crawlspace of the Property. ("the Loss"). State Farm never performed an onsite inspection of the Loss.

5.     After the Loss occurred, the owner of the Property, DeLeon Gause, timely filed an insurance claim with State Farm. State Farm assigned Claim Number 47-77W4-39NW ("Claim") to the Loss. The Policy was in effect at the time of the Loss.

6.     After the Loss, Mr. Gause entered into a document entitled "Agreement to Perform Services Contract" ("Contract") with Northwest.

7.     Under the Contract, Mr. Gause expressly provided Northwest with permission to "dehumidify, cleanse, decontaminate, deodorize, disinfect (*e.g.*, media blast), fumigate, purify, antisepticise, sterilize, and perform any other work to remedy the damage at the premises, including testing for lead, asbestos, particular categories of water damage, and microbial growth (such as mold) and removing specific components (*e.g.*, drywall, flooring, trim) of property impacted by the damage."

COMPLAINT - 2

**CB | LAWYERS**

CAMPBELL & BISSELL | PLLC
Corbet-Asprey House
820 W. 7ᵗʰ Avenue
Spokane, WA 99204
509-455-7100

8.     Pursuant to the Contract, Mr. Gause also assigned all of his "insurance rights (including statutory and regulatory), benefits, proceeds, and causes of action arising out of or relating to" the Policy and Claim to Northwest which pertained to its services.

9.     After Mr. Gause and Northwest entered the Contract, Northwest commenced and completed its services under the Contract for the Property. Once Northwest completed its services, it issued its invoice to State Farm and Mr. Gause.

10.     After receipt of Northwest's invoice and the associated costs, on or about February 28, 2025, State Farm – through its adjuster – notified Northwest that it received the documents, inclusive of the invoice, from Northwest.

11.     On or about March 18, 2025, State Farm issued a payment of approximately $6,000 for Northwest's services.

12.     While State Farm did not perform an onsite investigation at the Property, it nevertheless denied payment (of benefits) for several services.

13.     Services that State Farm denied payment (of benefits) for are as follows:

    a.   Emergency Service Call.

    b.   The full amount of time for equipment setup, monitoring & takedown.

    c.   Residential Supervision/Project Management.

    d.   The full number of days required for a dehumidifier.

    e.   The full number of days required for air movers and axial air movers.

    f.   The full number of days required for a drying furnace and the associated fuel.

    g.   The full amount of PPE gloves.

    h.   The containment barrier.

COMPLAINT - 3

**CB | LAWYERS**

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7 Avenue
Spokane WA 99204
509 455 7100

      i.   HEPA vacuuming.

      j.   Application of anti-microbial agents.

      k.   Soda blasting.

      l.   Sealant.

14.   Additionally, State Farm denied payment of benefits for Northwest's reasonable unit prices for particular services.

15.   For the emergency services call, State Farm denied payment (of benefits) because, according to it, allocating resources to respond to a customer is "a cost of obtaining, retaining, and doing business." Based on State Farm's concession that this charge would be incurred as a cost of doing business, State Farm understood it was a cost Mr. Gause would incur. In fact, contrary to State Farm's denial, it has paid for this cost on other projects, demonstrating it was aware that its insureds incur this cost.

16.   For equipment setup, takedown, and monitoring, State Farm denied payment (of benefits) because, according to it, only 10 days were required to dry all of the components within the Property. Contrary to State Farm's (unreasonable) determination, which neglected to consider pertinent circumstances of this Loss (explained further below), more than 10 days were required. Upon information and belief, State Farm trains its adjusters to use arbitrary time periods when issuing benefits.

17.   In regard to the residential supervision/project management cost, State Farm denied payment of benefits, claiming that "[p]rofessionally trained mitigation technicians and professionals are able to address water mitigation tasks independently and should be able to speak with the customer, answer basic questions, and explain [the] process of handling. If the vendor

COMPLAINT - 4

CB | LAWYERS

CAMPBELL & BISSELL | PLLC
Cochran-Aspray House.
320 W. 7ᵗʰ Avenue
Spokane, WA 99204
509 455 7100

decides as a company that it will utilize a supervisor, it would not be [a] charge owed by the insured or State Farm." Upon information and belief, State Farm has a business practice of denying benefits for a supervisor.

18.    Contrary to State Farm's (unreasonable) determination regarding supervisors, Washington law requires contractors to provide supervisors on jobsites to, among other things, ensure the safety of its employees. Additionally, while technicians are certified to address water mitigation, a project manager is required to – among other things – properly sequence the job, otherwise no direction is provided for the services, including with respect to the interplay of other individuals such as subcontractors.

19.    In terms of the dehumidifiers used in the crawlspace, State Farm arbitrarily reduced the number of days to 10, assuming that the Property should have dried within 10 days. Specifically, State Farm stated: "If proper containment was installed along with proper equipment usage (Negative air fan(s), air movers, dehumidifiers, drying furnace) this dry-out would not have taken anywhere near the 49 days that [Northwest] is charging for."

20.    Contrary to State Farm's (unreasonable) determination as to the dry period:

a.    when the Loss occurred, Northwest placed a dehumidifier in the hallway leading to the crawlspace on the first days in order to stabilize the environment.

b.    because the Loss consisted of Category 3 water, air movement could not be placed in the crawlspace on the first day to dry the components but rather needed to be placed for the purpose of air exchange – *i.e.*, removing moisture from the crawlspace.

c.    Northwest then commenced its initial cleaning of the floor joists within the crawlspace before having to use a more abrasive method (more on this below) by which

COMPLAINT - 5

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corber-Aspray House
820 W 7th Avenue
Spokane, WA 99204
509.455.7100

to completely clean the Category 3 water, and before Northwest could provide air movement within the crawlspace to dry components, it needed to first clean the components in accordance with the IICRC S500.

d.    After cleaning became impractical due to the remaining dirt, sediment, and debris located on the structural components within the crawlspace, Northwest then properly decided to use a permissible method of agitation (media blasting) to remove the dirt and debris in order to properly clean the structural components – more on this below – in accordance with the IICRC S500.

e.    Throughout this time period, Northwest kept a dehumidifier at the Property so as to prevent secondary damage – an obligation contained within the Policy.

f.    The agitation method (media blasting) of cleaning the Category 3 water commenced on or about January 8, 2025, and due to the complexity of cleaning approximately 3,480 square feet of structural components within a confined space, was not completed until January 18, 2025.

g.    After Northwest removed the dirt and debris via the agitation method (media blasting), it was then able to fully access the structural components to finish cleaning the structural components via HEPA vacuuming and then dropping air movement for the purpose of drying the components within the crawlspace.

h.    The components did not reach their dry standard until approximately January 28, 2025, at which point air movement and the dehumidifiers could be removed.

COMPLAINT - 6

CB | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99201
509 455 7100

21.     As demonstrated above, based on the circumstances of the Loss and in conjunction with the governing standards regarding restoration services, it was impossible to complete the dry-out within the arbitrary period of 10 days affixed by State Farm.

22.     State Farm's determination with respect to the dry period can only be characterized as unreasonable. As an example of State Farm's unreasonableness, pursuant to the IICRC S500, "[p]rior to implementing the restorative drying effort (e.g. rapid air movement), restorers should evaluate then clean materials within the work area as needed. Where necessary, restorers should clean visible debris, dust, and soil from materials and surfaces to reduce the amount of soil or particulates that can become aerosolized."

23.     Had State Farm performed a reasonable investigation, it would have known of the debris and dirt located within the crawlspace of the Property, thus requiring cleaning before applying air movement to dry components. In spite of this obligation, State Farm affixed an arbitrary dry period of 10 days. Because State Farm's determination of 10 days is devoid of support for this particular loss, its denial of benefits for equipment for an amount exceeding 10 days of drying is unreasonable.

24.     Rather than use air movement to dry components on the first day of restoration, which would have been inconsistent with the governing standard, Northwest employed a drying furnace in accordance with the IICRC S500. Northwest retained the drying furnace at the Property for 44 days in order to not only assist the components in moving toward their dry standards before air movement could be placed for drying, but to ultimately assist the components within the crawlspace to reach their dry standard even after air movement for drying had been placed.

COMPLAINT - 7

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7ᵗ Avenue
Spokane, WA 99204
509.455.7100.

25. State Farm denied payment of benefits regarding the drying furnace for an amount exceeding 10 days, again basing its determination upon the arbitrary belief (which is also contrary to the governing standards) that the components could have been dried within 10 days.

26. Because air movement could not be placed in the crawlspace without the Category 3 water first having been remediated, Northwest used a drying furnace within the crawlspace to aid in drying the components within while not aerosolizing the Category 3 water to different areas of the Property, among other things. Because the Category 3 water could not be remediated within State Farm's arbitrary time period of 10 days, the drying furnace likewise could not have been removed within 10 days.

27. As to the air movers within the crawlspace of the Property, State Farm, again, used its arbitrary dry period of 10 days and only allocated 3 air movers to the crawlspace. Contrary to its (unreasonable) determination, the number of air movers required for the crawlspace was more than 3. Northwest used 7 air movers for 6 days after cleaning completed, meaning for air movers intended to dry out the Property, State Farm needed to issue benefits for an amount of 42.

28. In spite of the requirement to issue payment for an amount of 42 for the 7 air movers set in the crawlspace to dry the components, State Farm only issued payment for 30, based on its (unreasonable) determination with respect to the number of air movers and the arbitrary 10-day period.

29. State Farm likewise (unreasonably) denied payment of benefits for the air movers used to exchange air – *i.e.*, remove moisture from within the crawlspace. State Farm did not issue payment of benefits for these air movers.

COMPLAINT - 8

**CB** | LAWYERS
CAMPBELL & BISSELL | PLLC
Corbin Aspen House
320 W 7 Avenue
Spokane, WA 99204
509.455.7100

30.     State Farm also (unreasonably) denied payment of benefits for Northwest's use of the air axial fan to an amount exceeding 10 days, again relying upon its arbitrary determination of 10 days. Northwest used the air mover axial fans to eject dust from the crawlspace as a result of the agitated cleaning method, and then once completed for the purpose of drying the components within.

31.     State Farm (unreasonably) denied payment of benefits for Northwest's use of an IBIX machine – media blasting equipment. Northwest used the IBIX machine as part of its agitated cleaning methods due to the circumstances present for the Loss. State Farm denied payment for these benefits, claiming that "[s]oda blasting is neither standard nor customary in the Water Mitigation industry."

32.     Despite State Farm's denial, had it performed an investigation, among other things, of the crawlspace, it would have realized that regular cleaning methods were impractical due to the dirt and debris located on the structural components contaminated by Category 3 water. As a result, and had State Farm complied with the IICRC S500, it would have understood that soda blasting was a permissible method of cleaning. As an example, the IICRC S500 explicitly provides that when "decontamination cannot be practically completed by cleaning alone, that appropriate . . . mechanical means be employed. Refer to the current version of the *ANSI/IICRC S520 Standard for Professional Mold Remediation* for more information."

33.     Pursuant to the IICRC S520, soda blasting is a permissible agitation method for cleaning and was the only efficient method of cleaning. Had Northwest not used this abrasive method of cleaning within the crawlspace, the number of days for the furnace and dehumidifiers

COMPLAINT - 9

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet Spray House
820 W 7' Avenue
Spokane, WA 99204
509.455.7100

would have been even longer – considering air movement could not be placed – because less efficient methods such as sanding would have needed to be performed.

34.    State Farm (unreasonably) denied payment of benefits for Northwest's use of a HEPA vacuum. State Farm used a boilerplate response to deny payment for the HEPA vacuuming.

35.    Contrary to State Farm's boilerplate response for its (unreasonable) denial regarding HEPA vacuuming, the governing standard authorizes the use of HEPA vacuuming as part of its cleaning efforts. Specifically, the IICRC S500 explicitly states: "[w]hen extracting contaminated water or vacuuming contaminated dry material, restorers should take appropriate steps to prevent contaminants from becoming aerosolized in work areas or other parts of a building by using HEPA vacuum systems . . . ." Instead of considering the circumstances of this Loss in accordance with the governing standard, State Farm used a canned response as to HEPA vacuuming to (unreasonably) deny benefits.

36.    State Farm also (unreasonably) denied payment of benefits for the application of sealant and use of anti-microbial, along with PPE gloves. State Farm's unreasonable denials, again, pertain to its failure to consider the circumstances of the Loss in conjunction with the governing standards, among other things.

37.    State Farm has maintained its (unreasonable) denial of benefits for a number of months. Because of State Farm's unlawful actions, Northwest served its Insurance Fair Conduct Act ("IFCA") letter on the Washington State Office of Insurance Commissioner and State Farm. State Farm failed to cure its (unreasonable) denial of benefits.

COMPLAINT - 10

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Spray House
820 W. 7th Avenue
Spokane, WA 99201
509-455-7100

### III.   CAUSES OF ACTION
#### (First and Second Causes of Action – Breach of Contract and Bad Faith)

38.     Northwest realleges and incorporates the applicable foregoing and forthcoming paragraphs.

39.     The Policy is a valid and enforceable contract and contains payment obligations, to which Northwest received an assignment of the rights therein with respect to its services.

40.     State Farm breached the Policy and acted in bad faith by, among other things, failing to issue all payments due for Northwest's services performed at the Property.

41.     State Farm's breach and bad faith have caused damages in a principal amount to be proven at trial.

#### (Third Cause of Action – Consumer Protection Act Claim)

42.     Northwest realleges and incorporates the foregoing and forthcoming applicable paragraphs.

43.     State Farm's acts or practices violated the Consumer Protection Act, RCW § 19.86 *et seq.*

44.     State Farm's acts or practices were unfair and/or deceptive. For example:

a.     State Farm misrepresented its payment obligations under the Policy in conjunction with the circumstances of the Loss;

b.     State Farm failed to promptly and appropriately communicate with Northwest;

c.     State Farm refused to pay claims without conducting a reasonable investigation; and

COMPLAINT - 11

**CB | LAWYERS**

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
330 W 7⁴ Avenue
Spokane, WA 99204
509.455.7100

d.    State Farm has required Northwest to initiate litigation to recover amounts due under the Policy.

45.    State Farm's acts or practices constitute a violation of WAC § 284-30-330(1), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

46.    State Farm's acts or practices constitute a violation of WAC § 284-30-330(2), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

47.    State Farm's acts or practices constitute a violation of WAC § 284-30-330(4), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

48.    State Farm's acts or practices constitute a violation of WAC § 284-30-330(6), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

49.    State Farm's acts or practices occurred in trade or commerce.

50.    State Farm's acts or practices impact public interest.

51.    State Farm's unfair or deceptive acts or practices have caused injury in an amount to be proven at trial.

**(Fourth Cause of Action – Insurance Fair Conduct Act Claim)**

52.    Northwest realleges and incorporates the foregoing applicable paragraphs.

COMPLAINT - 12

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Loony House
820 W 7 Avenue
Spokane, WA 99204
509 455 7100

53.     Northwest provided written notice of the basis for its cause of action against State Farm under the Insurance Fair Conduct Act to the Office of the Washington State Insurance Commissioner and to State Farm, as provided by RCW § 48.30.015(8).

54.     State Farm failed to resolve the basis for this cause of action within the time prescribed by RCW § 48.30.015(8)(b).

55.     State Farm's acts and omissions, as alleged above, violated the Insurance Fair Conduct Act, as it has, among other things, unreasonably denied payment of benefits.

56.     Northwest is entitled to damages in an amount to be proven at trial.

## IV.     PRAYER FOR RELIEF

1.     For judgment against the defendant and in favor of Northwest in an amount to be proven at trial;

2.     For an award of Northwest's attorney's fees and costs pursuant to RCW § 19.86.090, RCW § 48.30.015(1), and any other applicable law;

3.     For an award of prejudgment interest and post-judgment interest;

4.     For an award of treble damages against State Farm pursuant to RCW § 19.86.090 and RCW § 48.30.015(2); and

5.     For such other and further relief as the Court deems just and equitable.

DATED this ___ day of December, 2025.

CAMPBELL & BISSELL, PLLC

WILLIAM GIERI, WSBA #52761
Attorney for Plaintiff

COMPLAINT - 13

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
Cooper-Aspray House
82 W. 7 Avenue
Spokane WA 99204
509-455-7101